COMMISSIONER OF THE METROPOLITAN DISTRICT COMMISSION
*vs.* DIRECTOR OF CIVIL SERVICE & another.

Suffolk.    October 7, 1964. — December 7, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Civil Service. Veteran. Pardon. Police.*

Under G. L. c. 31, § 23, an appointing authority may in his discretion refrain from appointing to a civil service position a disabled veteran on an eligible list if the appointing authority on reasonable grounds deems that the veteran's character or past conduct renders him unsuitable to hold the position.    [193]

Discussion of the effect of a pardon.    [193–196]

A full pardon, not on the ground of innocence, given to one who had pleaded guilty to and been sentenced for a felony did not preclude a civil service appointing authority from taking into consideration the conduct leading to the conviction in determining the pardoned person's suitability to hold a position in the civil service.    [194]

The absolute disqualification in G. L. c. 41, § 96A, of one convicted of a felony for appointment as a police officer was removed by a full pardon

given him, even though not on the ground of innocence, and it became open to him to seek such an appointment and to hold the position if appointed, but the appointing authority was entitled to take into consideration the conduct leading to the conviction in determining his suitability for the position.   [196]

Where a disabled veteran, after pleading guilty to and being sentenced for armed robbery, received a full pardon and thereafter was placed on a civil service eligible list for appointment as a police officer, the appointing authority was not precluded by the pardon, or by the removal of the absolute disqualification in G. L. c. 41, § 96A, through the pardon, from taking into consideration the armed robbery and the general policy expressed in § 96A in determining the veteran's suitability to hold the position of a police officer, and, under G. L. c. 31, § 23, would have discretion to refuse to appoint him upon reaching the justifiable conclusion that he was not suitable.   [197]

BILL IN EQUITY filed in the Superior Court on February 20, 1964.

The suit was heard by *Taveira*, J.

*William D. Quigley,* Special Assistant Attorney General (*Harvey E. Weir* with him), for the plaintiff.

*Nelson I. Crowther, Jr.,* Assistant Attorney General, for the Director of Civil Service.

*Arnold L. Slavet* for Cornelius J. O'Handley.

CUTTER, J.   The commissioner of the Metropolitan District Commission (M.D.C.) seeks declaratory relief against the director of civil service (the director) and O'Handley to determine whether O'Handley must be appointed a patrolman on the Metropolitan District Police.   It was alleged (and later agreed) that O'Handley was a disabled veteran; that on August 7, 1954, he had pleaded guilty to, and been sentenced upon, an indictment for armed robbery; and that on September 12, 1958, he received a full pardon.

The case was heard upon a statement of agreed facts. By final decree it was declared that O'Handley must be appointed and was entitled to back pay.   The commissioner appealed.

On September 16, 1961, a civil service examination was held "to provide a list . . . to fill vacancies" as patrolman in the M.D.C.'s police.   The list was established on the basis of a "written examination, training, and experience

as well as a physical examination and strength test.'' The commissioner of the M.D.C. made a requisition to the director in order to make twenty-five appointments from the list. The director sent a certification to the commissioner containing thirty-five names of which the first sixteen were disabled veterans and the remaining nineteen were veterans. O'Handley was the tenth person in line for appointment. He was certified as a disabled veteran and held ''a discharge which covers service in both World War II and the Korean Conflict.'' O'Handley is ''willing and able to accept . . . but the [c]ommissioner has refused to appoint him.'' The commissioner, as his reason, referred in a letter of January 8, 1964, to O'Handley's plea of ''guilty to the charge of [armed] robbery . . . . [O'Handley] was sentenced to an indefinite term for armed robbery of an A & P store and for carrying a dangerous weapon and thereafter was remanded to the . . . [r]eformatory at Concord. Inasmuch as . . . [G. L. c. 41, § 96A] reads: 'No person who has been convicted of any felony shall be appointed as a police officer . . .' my decision in not appointing him, even though he is a disabled veteran . . . is obvious. . . . [I]t should be disclosed that on September 12, 1958 . . . O'Handley was granted a full . . . pardon by the then Governor, with the . . . consent of the . . . Council.''

Relying upon a 1961 opinion of the Attorney General (Rep. A. G. Pub. Doc. No. 12, 1961, p. 125) in a similar case and also upon a 1964 opinion concerning this very matter, the director wrote to the commissioner that it was ''necessary that . . . O'Handley be appointed.'' A second letter (February 14, 1964) from the director stated that ''inasmuch as . . . O'Handley, a disabled veteran, has not been appointed . . . the appointments of the following non-disabled veterans, who were appointed from the certification list of December 9, 1963 on which . . . [O'Handley's] name . . . was certified as a disabled veteran, are hereby revoked.'' Then followed the names of fourteen patrolmen. It has been stipulated that if O'Handley was, ''as a matter of law, entitled to the appointment'' he shall receive back

348 Mass. 184                    187

Commissioner of the Metropolitan Dist. Commn. *v.* Director of Civil Service.

pay as of December 30, 1963, and that a vacancy "will be held available until the conclusion of this litigation."

This case is in most respects one of first impression in Massachusetts. It requires consideration of (a) the extent of the appointing authority's discretion, under G. L. c. 31, § 23 (as amended through St. 1954, c. 627, § 5),[1] to refrain from appointing a disabled veteran to a civil service post because of his past commission of a serious crime of violence, and (b) the extent to which O'Handley's pardon[2] may prevent the commissioner from considering, as a ground for not appointing O'Handley a police officer, the robbery which led to O'Handley's plea of guilty and sentence.

1. The commissioner is the appointing officer of the M.D.C. See G. L. c. 28, § 3 (as amended through St. 1961, c. 562, § 1). As such, he possesses whatever discretion is given to an appointing authority under the civil service statutes and regulations.[3]

2. In *Brown* v. *Russell,* 166 Mass. 14, the question was

---

[1] Section 23, as thus amended, reads, "The names of persons who pass examinations for appointment to any position classified under the civil service shall be placed upon the eligible lists in the following order: — (1) Disabled veterans as defined in section twenty-three A, in the order of their respective standing; (2) veterans in the order of their respective standing; (3) persons described in section twenty-three B [not here applicable] in the order of their respective standing; (4) other applicants in the order of their respective standing. . . . A disabled veteran shall be appointed and employed in preference to all other persons, including veterans."

[2] The power of pardon is governed by the Constitution of Massachusetts, Part II, c. 2, § 1, art. 8, as modified by art. 73 of the Amendments, which reads in part, "The power of pardoning offences . . . shall be in the governor, by and with the advice of council, *provided, that if the offence is a felony the general court shall have power to prescribe the terms and conditions upon which a pardon may be granted . . .*" (emphasis supplied). The italicized words were inserted by art. 73 of the Amendments in 1944. By St. 1945, c. 180, the Legislature, acting under the authority of art. 73, prescribed G. L. c. 127, §§ 152 and 154, "as respectively amended," and § 153, as "terms and conditions which shall be complied with before pardoning felonies." Sections 152, 153, and 154 do not seem relevant in this case.

[3] The regulations are before us as an exhibit. Rule 16 provides, in part, "1. In the selection from the persons whose names are certified by the [d]irector, the appointing officer, if he so desires, may be allowed to examine the applications, the certificates and examination papers of the persons certified; and, in the exercise of his responsible power of selection, he may summon personally before him the certified persons for such inquiries as he may deem proper." Rule 5 provides, in part, that "[g]ood character is an essential qualification for admission to the eligible list"; that "[t]he burden of proof of good character" rests upon the applicant; and that the director may refuse to certify an eligible upon proof, among other things, of "[c]riminal, infamous, dishonest, immoral, notoriously disgraceful, dissolute, or bad conduct or character."

188                                                    348 Mass. 184

Commissioner of the Metropolitan Dist. Commn. v. Director of Civil Service.

presented whether a veteran could properly be placed at the head of the eligible list for appointment to the detective force of the Commonwealth's district police in preference to all others, under St. 1895, c. 501, which authorized appointment of veterans without examination. The court said (p. 24), "The purpose of St. 1895, c. 501, §§ 2 and 6, is to make the appointment of veterans compulsory, if they desire to be appointed, whether the appointing power or the commissioners think they are or are not qualified to perform the duties of the office or employment which they seek." The court proceeded (p. 25), "[I]t is inconsistent with the nature of our government, and particularly with articles 6 and 7[4] of our Declaration of Rights, that the appointing power should be compelled by legislation to appoint to public offices persons of a certain class in preference to all others, *without the exercise on its part of any discretion,* and without the favorable judgment of some . . . officer or board designated by law to . . . determine whether the persons to be appointed are *actually qualified* to perform the duties which pertain to the offices" (emphasis supplied). At pp. 26–27, it was said, "We are of opinion that §§ 2 and 6 . . . so far as they purport *absolutely* to give to veterans particular and exclusive privileges distinct from those of the community in obtaining public office, cannot be upheld as . . . within the constitutional power of the General Court" (emphasis supplied). The opinion pointed out (p. 20) that there was in the 1895 statute no "indication that the Legislature intended that the [civil service] commissioners should examine a veteran . . . [who made application under the statute] with reference to his moral character, or his mental acquirements and capacity to perform the duties of the position which he seeks." Moral character thus seems to have been regarded by the court as a requisite of appointment at least on a parity with

---

[4] Concerning art. 7, the court indicated (p. 21) that it was "fairly within the intent of this article that public offices . . . ought not to be . . . filled for the . . . private interest of any one . . . class of men, but only for the protection [and] safety . . . of the people and for the common good."

"mental acquirements and capacity to perform the duties."

Shortly thereafter the Legislature enacted St. 1896, c. 517.[5] In *Opinion of the Justices,* 166 Mass. 589, the Justices considered that statute and certain rules proposed thereunder. Four Justices said (p. 595) that the effect of § 2 "is that the veterans must first be found qualified, by an examination in accordance with the civil service statutes and rules, to perform the duties of the office . . . and, if they are found so qualified, they are to be preferred in appointment . . . . The General Court may have been of opinion that" an honorably discharged veteran "is a person who has shown such qualities of character that it is for the interests of the Commonwealth to appoint him to certain offices . . . in preference to other male persons, *if he is found otherwise qualified to perform the duties.* The General Court may have so thought, on the ground either that such a person would be likely to possess courage, constancy, habits of obedience, and fidelity, which are valuable qualifications for any public office . . . or that the recognition of the services of veterans . . . would promote . . . devotion to the welfare of the State . . . . If such was the opinion of the General Court, we cannot say that it was beyond its constitutional power to enact this section. Of the wisdom of such legislation we are not made the judges. *The section does not purport to give an absolute preference to veterans without regard to their qualifications,* and the constitutionality of similar legislation was not considered in" *Brown* v. *Russell,* 166 Mass. 14 (emphasis supplied). Three Justices were of opinion (pp. 599–600) that it was "not within the constitutional power of the Legislature to enact that veterans shall be pre-

---

[5] Section 2 provided that veterans passing an examination for a position in the classified service "shall be preferred . . . to all persons not veterans; and it shall be the duty of the civil service commissioners to cause the names of [such] veterans . . . to be placed upon the eligible list . . . above the names of all applicants not veterans. The commissioners shall cause to be certified . . . for appointment the names of all such veterans in preference to applicants not veterans . . . ." Section 3 read, in part, "Veterans may apply for appointment to . . . any position in the . . . [classified] service . . . without examination. . . . Appointing officers may by requisition call for the names of . . . veterans so applying without examination, and appoint or employ any of them in the office or position sought."

ferred for public office or employment to others who may have higher standing or superior qualifications.''

With respect to § 3 (see fn. 5) all the Justices were of opinion (pp. 595–596) that it validly gave ''a discretion to the appointing power to appoint veterans to certain . . . [positions] without an examination, if in its opinion the needs of the public service require this to be done.'' At p. 596, it was said, ''Undoubtedly this . . . gives a certain advantage to veterans over other persons in being appointed to office or employment, but *the section implies that the veteran to be appointed shall be found qualified by the appointing power in its own way, and it was not intended to provide for the appointment of veterans who are not qualified to perform the duties pertaining to the office or employment which they seek*. The section does not necessarily exclude the appointment of other persons if *the appointing power* is of opinion that the appointment should be made under the civil service statutes and rules. We cannot say that this section is an enactment beyond the constitutional power of the General Court'' (emphasis supplied). The Justices were not confronted with a question involving any specific appointee or office and had only incidental occasion to consider or mention (see p. 597) good character or other qualities not established by passing a civil service examination.

The diverse views expressed in *Opinion of the Justices,* 166 Mass. 589, indicate strongly that the limited preference for veterans there discussed goes to the limit of what is constitutionally permissible. See *Phillips* v. *Metropolitan Park Commn.* 215 Mass. 502, 506, where the court strictly construed certain veterans' preference legislation and said, ''This construction finds confirmation in the circumstance that the language occurs in the civil service law, the design of which is to secure efficiency in the public service and prevent discrimination in appointments to it based on any other consideration than fitness to perform its duties. It concerns a preference in favor of veterans, the constitutionality of which has been much debated . . . and . . . in any

event cannot go beyond closely confined boundaries. Extension of such preference is not to be implied from equivocal words."[6]

The later cases, like the earlier authorities, have sustained the constitutional validity of a veterans' preference where there is (a) no legislative requirement of absolute preference and (b) reasonable legislative recognition of the principle that an appointee must be qualified for the position which he seeks. See *Canty* v. *City Council of Lawrence,* 275 Mass. 261, 263 (G. L. c. 31, § 23, as amended, "gives . . . no absolute and unconditional preference"); *MacCarthy* v. *Director of Civil Serv.* 319 Mass. 124, 126; *Opinion of the Justices,* 324 Mass. 736, 740–742; *McNamara* v. *Director of Civil Serv.* 330 Mass. 22, 25–26.[7]

The director places some reliance upon *Mayor of Lynn* v. *Commissioner of Civil Serv.* 269 Mass. 410, 414, *Younie* v. *Director of the Div. of Unemployment Compensation,* 306 Mass. 567, 571, and *Smith* v. *Director of Civil Serv.* 324 Mass. 455. Although in the *Mayor of Lynn* case, this court adopted the reasoning of the majority Justices in *Opinion of the Justices,* 166 Mass. 589, it pointed out (pp. 414–415) that G. L. c. 31, § 23, "reaches close to the limit of legislative power." In the *Younie* case, § 23 (as amended through St. 1939, c. 238, § 30) was spoken of (p. 571) as providing

---

[6] Similar views have been expressed in other cases. See *Ransom* v. *Boston,* 192 Mass. 299, 304 (where a veterans' preference was construed as intended only "as long as he [the veteran] was able to do the work . . . and the occasion for the work continued"); *Corliss* v. *Civil Serv. Commrs.* 242 Mass. 61, 65; *MacCarthy* v. *Director of Civil Serv.* 319 Mass. 124, 126 (disabled veterans' preference strictly construed as limited to the original entry into the service and as not extending to promotion).

[7] In *Opinion of the Justices,* 324 Mass. 736, certain proposed rules were construed as giving "no absolute preference" even if the applicants pass an examination. It was said (p. 740) that *Brown* v. *Russell,* 166 Mass. 14, "still stands" and "at least marks a limit beyond which veterans' preference cannot be carried." In the *McNamara* case, we said "Two propositions must now be deemed established. (1) Any absolute preference to veterans as the result of which the appointing authority is obliged to appoint them to office in preference to others without regard to fitness is unconstitutional. . . . (2) But if the fitness of the veteran is first determined by passing an examination . . . he may be given a preference in actual employment." The opinion, however, had no occasion to deal with any question of moral fitness or character.

192                                                       348 Mass. 184

Commissioner of the Metropolitan Dist. Commn. v. Director of Civil Service.

"that, when [disabled veterans have been certified for appointment, the appointing power could not decline to appoint them . . . and appoint others who were not disabled veterans." No issues relating to moral fitness and character were before the court and we do not construe the quoted language as having reference to such issues. Moral fitness and character, of course, are not readily tested by the ordinary civil service examinations which are the usual basis of certification. In *Smith* v. *Director of Civil Serv.* 324 Mass. 455, 460 (as in *Hayes* v. *Hurley*, 292 Mass. 109, 113), this court did not reach the question of the constitutionality of that part of § 23 "which purports to give to a disabled veteran absolute preference over all other persons including veterans in appointment to office."

We conclude that *Brown* v. *Russell*, 166 Mass. 14, has not been modified by later decisions, and that no opinion of this court has held that an appointing authority must appoint an eligible disabled veteran or veteran, not of good moral reputation and character, merely because of his past military record, in preference to other duly certified, eligible persons of good character. We think that § 23 (see fn. 1) in requiring that a disabled veteran "be appointed . . . in preference to all other persons" may not be construed (1) as creating a mandatory, absolute preference, or (2) as depriving appointing authorities of the power, implicit in the civil service rules (fn. 3), to protect the services for which they are responsible from unworthy appointees of bad character, or (3) as requiring them to disregard facts concerning a disabled veteran's character or past conduct which may reasonably be regarded as making him unfit for appointment. To construe § 23 as imposing such an absolute preference would deprive that section of one basis sometimes advanced to justify a veterans' preference (see *Opinion of the Justices*, 166 Mass. 589, 595; *Smith* v. *Director of Civil Serv.* 324 Mass. 455, 460), viz. that a veteran by reason of his military service "might have such qualities . . . that it is for the interests of the Commonwealth to appoint him to certain offices or employments." It would be unreason-

348 Mass. 184                                                    193

Commissioner of the Metropolitan Dist. Commn. v. Director of Civil Service.

able to impute to the Legislature an absolute requirement that a disabled veteran be appointed where the facts before the appointing authority show that a particular veteran is not a suitable person to appoint. A construction of § 23 as requiring such an absolute preference would also lead to serious doubts of its constitutional validity.

In part because of these doubts (see *Opinion of the Justices*, 341 Mass. 760, 785; *Bay State Harness Horse Racing & Breeding Assn.* v. *State Racing Commn.* 342 Mass. 694, 699; *Boston Safe Deposit & Trust Co.* v. *State Tax Commn.* 346 Mass. 100, 106) we adopt a construction of § 23 which is within the constitutional limits set out in *Brown* v. *Russell*, 166 Mass. 14, 21–27, and *Opinion of the Justices*, 324 Mass. 736, 740. We hold that under § 23 an appointing authority has the power and duty to protect the public interest in having only public officers and employees of good character and integrity and may refrain from appointing a disabled veteran in preference to others where there are reasonable grounds to regard that veteran's character or past conduct as rendering him unfit and unsuitable to perform the duties of office.

3. Much confusion concerning the effect of a pardon has been caused by the broad statement in *Ex Parte Garland*, 4 Wall. 333, 380, that a pardon "releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." Of this statement, Professor Williston said (see Does a Pardon Blot Out Guilt? 28 Harv. L. Rev. 647, 648), "Everybody knows that the word 'pardon' naturally connotes guilt[8] as a matter of English. Everybody also knows that the vast majority of pardoned convicts were in fact guilty; and when it is said that in the eye of the law

---

[8] A pardon "carries an imputation of guilt; acceptance [of a pardon] a confession of it." See *Burdick* v. *United States*, 236 U. S. 79, 94. Cf. *Biddle* v. *Perovich*, 274 U. S. 480, 486–488. O'Handley's plea of guilty to armed robbery strongly implies that his pardon was not granted because he was innocent. A pardon clearly granted because of the wrongful conviction of an innocent person might present questions not raised by this record. See *Matter of Kaufman*, 245 N. Y. 423, 429; Weihofen, The Effect of a Pardon, 88 U. of Pa. L. Rev. 177, 179, 185, 192.

they are as innocent as if they had never committed an offence, the natural rejoinder is, then the eyesight of the law is very bad.'' We adopt, so far as applicable to the facts before us, Professor Williston's view of the ''true line of distinction'' (28 Harv. L. Rev. 647, 653) as follows: ''The pardon removes all legal punishment for the offence. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.'' In other words, even if a pardon may remit all penal consequences of a criminal conviction, it cannot obliterate the acts which constituted the crime. These acts are historical facts (see Rep. A. G. Pub. Doc. No. 12, 1942, p. 60) which, despite the public act of mercy and forgiveness implicit in the pardon, ordinary, prudent men will take into account in their subsequent dealings with the actor.

Few Massachusetts cases (see Lattin, The Pardoning Power in Massachusetts, 11 B. U. L. Rev. 505, 519) have dealt with the effect of pardons. *Perkins* v. *Stevens,* 24 Pick. 277, 280, held that a partial pardon did not restore the competency of the offender as a witness in a day when conviction resulted in excluding the testimony of one convicted of a felony. In the course of the opinion, however, Morton, J., approved a text statement that the power of pardon, ''when *fully* exercised, is an effectual mode of restoring the competency of a witness. It must be *fully* exercised to produce this effect; for if the *punishment* only be pardoned or remitted, it will not restore the competency, and does not remove the blemish of character. There must be a *full and free pardon* of the *offence,* before these can be restored and removed.'' We do not construe this statement and the somewhat comparable statement in *Rittenberg* v. *Smith,* 214 Mass. 343, 347, as more than dicta con-

348 Mass. 184                                                    195

Commissioner of the Metropolitan Dist. Commn. v. Director of Civil Service.

cerning the effect which a full pardon might have upon the offender's competency as a witness (in the *Perkins* case) or, perhaps, upon the use of the pardoned conviction to impeach the witness.[9] We, in any event, are unwilling, upon the basis of these statements, to conclude that a pardon precludes public officers from reasonable consideration of the facts constituting the pardoned offence in any matter in which those facts may be relevant. Cases like *Commonwealth* v. *Lockwood,* 109 Mass. 323, are not pertinent.

The authorities outside of Massachusetts are not wholly consistent in describing the effect of pardons. See Weihofen, The Effect of a Pardon, 88 U. of Pa. L. Rev. 177. The better considered cases reject the unduly broad language of *Ex Parte Garland,* 4 Wall. 333, 380, and treat a pardon (at least one not based on the offender's innocence) as removing only penal consequences of the criminal acts without foreclosing reasonable consideration of the conviction and the circumstances of the pardoned crime. A conviction, later pardoned, may be taken into account on the issue of sentence for a subsequent offence, as, for example, under an habitual criminal statute. *People* v. *Biggs,* 9 Cal. 2d 508, 510–514. *Jones* v. *State,* 141 Texas Crim. App. 70, 72–77. *State* v. *Edelstein,* 146 Wash. 221, 243–249. See *Carlesi* v. *New York,* 233 U. S. 51; *Timberlake* v. *Commonwealth,* 245 Ky. 163, 165; *Commonwealth* v. *Smith,* 324 Pa. 73, 76–78. See also *Commonwealth* v. *Cannon,* 386 Pa. 62, 65–68. The pardoned offence, and the facts underlying it, may be considered in disbarment proceedings (*Matter of Lavine,* 2 Cal. 2d 324, 327–329; *State* v. *Snyder,* 136 Fla. 875, 877–878); see *In re Stephenson,* 243 Ala. 342, 346–347; annotation, 70 A. L. R. 2d 268, 333–335) and in other instances where proof of good moral background and character is

---

[9] See the discussions in Wigmore, Evidence (3d ed.) §§ 980, 987 at pp. 572, 592, § 1117; McCormick, Evidence, § 43 at p. 91, § 157. See also *Commonwealth* v. *Green,* 17 Mass. 515, 551 (where offences pardoned sufficiently to permit the offenders to testify were shown in impeachment of the testimony); *Richards* v. *United States,* 192 F. 2d 602, 606–608, cert. den. 342 U. S. 946, reh. den. 343 U. S. 921; note, 42 Iowa L. Rev. 435; annotation, 30 A. L. R. 2d 893.

requisite. *Page* v. *Watson,* 140 Fla. 536, 548 (practice of medicine). *Beck* v. *Finegan,* 254 App. Div. (N. Y.) 110, 114–116 (civil service position). Cf. *Slater* v. *Olson,* 230 Iowa, 1005, 1010–1012. Even a statute, enacted primarily for the protection of the State and the public, making persons convicted of crime ineligible to hold office has been viewed as creating a disqualification not removed by a pardon which restores other civil rights. *State ex rel Atty. Gen.* v. *Irby,* 190 Ark. 786, 796–798. Cf. *State* v. *State Election Bd.* 169 Okla. 363, 365–366.

4. General Laws c. 41, § 96A (inserted by St. 1938, c. 342), provides that no person "convicted of any felony shall be appointed as a police officer of a . . . district." Whatever the legislative purpose behind § 96A may have been,[10] it necessarily has the practical effect of imposing a quasi penal, civil disqualification to be a police officer as an incident of, and automatically following upon, conviction for felony. In the light of the cases from other jurisdictions, already cited, we think that the absolute disqualification or ineligibility, imposed by such a statute, is to be regarded as removed by a full pardon, so that the pardoned person (1) may apply for appointment to the office for which he was formerly disqualified, and (2) may hold that office if he is able to sustain the heavy burden of satisfying the electorate or an appointing authority of his good character and suitability at the time of seeking office. We think also that, in considering such a pardoned applicant's qualifications and suitability, the events underlying the pardoned conviction may be and should be evaluated, and relied upon reasonably, by the proper public body or authority.

---

[10] Conceivably this section could be viewed, not as imposing a civil disqualification, but merely as a statutory provision, primarily intended to protect the public from unsuitable police officers. It might be argued that a statute of this type would be applicable despite the pardon of a convicted person within its terms. Cf. the *Irby* case, 190 Ark. 786, 796. We think, however, that § 96A in terms does create a statutory civil disqualification. Some support for our interpretation may be found in the circumstance that the Legislature has not expressly made § 96A, or some comparable provision, one of the "terms and conditions upon which a pardon may be granted" (see fn. 2), as we assume (without deciding) might have been done under art. 73 of the Amendments to the Constitution of Massachusetts.

We hold that O'Handley's full pardon removed his ineligibility under § 96A as an absolute bar to application and consideration for appointment, despite the strong legislative policy in § 96A that persons once convicted of felony are not thereafter to be entrusted with police duties. Nevertheless, even if O'Handley has ceased to be ineligible under § 96A to apply for appointment, it was open, and remains open, to the commissioner to refuse to appoint O'Handley because of the serious character of the criminal conduct underlying his conviction. The obvious inappropriateness of appointing as a police officer one previously convicted of felony, even though later pardoned (for grounds other than his innocence), was ample justification for the commissioner's refusal to appoint O'Handley. See *State ex rel. Atty. Gen.* v. *Hawkins,* 44 Ohio St. 98, 102, 116-117.

5. The final decree is reversed. A new decree consistent with this opinion is to be entered, declaring (1) that under G. L. c. 31, § 23, as amended, the commissioner has the duty and broad discretion to refuse to appoint O'Handley as a patrolman if he deems him to be of bad character, a poor moral risk, or an unsuitable appointee by reason of his pardoned conviction; and (2) that, in determining whether to appoint O'Handley, the commissioner may take into account and rely upon the facts related to O'Handley's pardoned conviction and may give weight to the general policy expressed in G. L. c. 41, § 96A.

*So ordered.*