## ULYSSES A. LETTSOME, Plaintiff

### v.

## CHARLES A. WAGGONER, Defendant

Civil No. 983/1983

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 25, 1986

■

---

DENISE R. REOVAN, ESQ. (LAW OFFICES OF DESMOND L. MAYNARD), St. Thomas, V.I., *for plaintiff*

JOSEPH BRUCE WM. ARELLANO, ESQ., St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

The court is required to decide a novel and previously unresolved question: When a governor pardons a person for a criminal assault conviction, can the fact of the assault be used against that person in a civil action for damages for that assault?

The matter is before the court on the plaintiff's motion for partial summary judgment, Fed. R. Civ. P. 56, seeking a determination that the defendant's criminal conviction for assault of the plaintiff collaterally estops the defendant from relitigating the fact of the assault. In response, the defendant argues that the pardon by the Governor of the Virgin Islands so totally purged the defendant's record that his prior conviction cannot be used for any collateral purpose. The defendant also argues that Rule 609(c), Fed. R. Evid., which prohibits the use of pardoned crimes for impeachment purposes, bars the court's consideration of the defendant's previous conviction in deciding plaintiff's motion. As a result, he has moved for an order prohibiting any mention or reference to the defendant's criminal conviction.

In keeping with the modern trend that views the pardon power as being limited, the court will grant the plaintiff's motion for partial summary judgment, and the defendant will be precluded from relitigating the fact of his assault on the plaintiff.

I

On September 20, 1982, a jury found the defendant Charles A. Waggoner guilty beyond a reasonable doubt of four offenses, including assault and battery upon a police officer in the lawful discharge of the duties of his office, 14 V.I.C. § 298(1) (1985 Supp.), and assaulting a peace officer, Ulysses A. Lettsome, with a deadly weapon in the lawful discharge of his duties, 14 V.I.C. § 297(5) (1985 Supp.). Waggoner appealed the convictions to the District Court of the Virgin Islands, which affirmed. Waggoner then further appealed to the U.S. Court of Appeals for the Third Circuit. On November 21, 1983, Lettsome filed the present civil suit for damages for the assault for which the defendant was convicted. While the conviction was still on appeal and this suit was pending, an executive pardon was signed by Governor Juan Luis on August 31, 1984, in which the Governor found that Waggoner was "fully rehabilitated" and directed that he "be fully and unconditionally

absolved from all legal consequences of said offenses and convictions therefor, direct or collateral."

## II

■■ As a result, this court is presented with a conflict between two long-standing, deeply rooted, competing legal doctrines. First, there is the doctrine of collateral estoppel, founded on notions of judicial efficiency and consistency, which bars the relitigation of facts and issues already decided in a judicial forum. Second, there is the constitutionally rooted power given to the chief executive to grant pardons to convicted persons, which power is premised on a perceived need for extrajudicial leniency in appropriate cases. A pardon, as the term implies, excuses a person for his previous offenses. In the instant case, though, the defendant is attempting to utilize his pardon to impair the ability of the plaintiff to achieve civil redress for the very acts that gave rise to the defendant's conviction.

■■ It is beyond dispute that criminal judgments normally preclude the retrial of the same issues in a subsequent and related civil action. "A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action . . . against the defendant in the criminal prosecution . . . ." [1] Restatement (Second) of Judgments, § 85(2)(a) (1982). As comment e to § 85(2) makes clear, the illogical requirement of the "mutuality rule," which stated that neither party could use a previous judgment against the other unless both were bound by the previous judgment, has been repudiated. Moreover, this jurisdiction not only has explicitly abrogated the mutuality rule, but it also has adopted the doctrine of offensive collateral estoppel "when the issue to be relitigated was necessarily determined during a criminal trial in the government's favor." Martin v. Frett, 1980 St. T. Supp. 478 (D.V.I. October 30, 1980). Clearly, the fact that Waggoner assaulted the plaintiff necessarily was decided in order for him to have been criminally convicted of third degree assault and aggravated assault and battery, and such a factual finding normally would bar a reconsideration of the matter.

---

[1] In the absence of local law to the contrary, the common law as expressed in the restatements of the law as adopted by the American Law Institute are the rules of decision in the courts of the Virgin Islands. 1 V.I.C. § 4 (1967).

The defendant's position, however, is that the Governor's pardon has wiped his slate clean with regard to any and all determinations or findings made in his criminal conviction. Correctly comparing the Governor's pardon power with that of the President of the United States,[2] the defendant relies on a number of 19th Century United States Supreme Court cases for the proposition that a pardon has unlimited effect in removing the stain of conviction. For example, in Ex Parte Garland, 71 U.S. (4 Wall) 366, 371 (1866), the Court held that a pardon completely wiped out the defendant's offense. In sweeping language the Court said:

> . . . [t]he inquiry arises as to the effect and operation of a pardon, and on this point all the authorities concur. A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.

> There is only this limitation to this operation: it does not restore offices forfeited, or property or interests vested in others in consequence of the conviction and judgment.

[2] U.S. Const. art. II, § 2, cl. 1 provides:

Section 2. [1] The President shall be Commander in Chief of the Army and Navy of the United States and of the Militia of the several States, when called into the actual Service of the United States; he may require the Opinion, in writing, of the principal officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices, and *he shall have Power to grant Reprieves and Pardons for Offences against the United States*, except in Cases of Impeachment. (Emphasis added.)

The Revised Organic Act of 1954, § 11, prec. 1 V.I.C. (1985 Supp.), 48 U.S.C. § 1591 (1982), in pertinent part provides:

The executive power of the Virgin Islands shall be vested in an executive officer whose official title shall be the "Governor of the Virgin Islands". . . .

. . .

He may grant pardons . . . and reprieves and remit fines and forfeitures for offenses against local laws.

In Carlisle v. United States, 83 (16 Wall) U.S. 426, 428 (1873), it was held that a pardon "forever close[s] the eyes of the court to the perception of [the fact of conviction] as an element in its judgment."

More recent cases, however, have questioned the breadth of these statements, and have concluded that "[m]uch confusion concerning the effect of a pardon has been caused by the broad statement in Ex Parte Garland . . . ." Commissioner of the Metropolitan District Commission v. Director of Civil Service, 203 N.E.2d 95, 101 (Mass. 1964). In fact, the vitality of the all-encompassing language of the Garland case has been undermined.

> Though older cases often employed this language . . . more recent authorities have questioned the breadth of the *Garland* description. . . . Modern cases support the proposition that "[a] pardon remits . . . punishment and removes some disabilities but does not erase the legal event determinative of the offender's status *qua* offender, i.e., the conviction itself." (Citations omitted.)

United States v. Castellana, 433 F. Supp. 1309, 1315 (M.D. Fla. 1977).[3] Again, "[t]he better considered cases reject the unduly broad language of Ex Parte Garland . . . and treat a pardon (at least one not based on the offender's innocence) as removing only penal consequences of the criminal acts without foreclosing reasonable consideration of the conviction and the circumstances of the

---

[3] Today, as Guastello v. Department of Liquor Control, 536 S.W.2d 21 (Mo. 1976) explains, there are three views as to the effect of a pardon on a person's conviction and the person's guilt. The first view holds that a pardon obliterates both conviction and guilt, but places the offender in a position as if he or she had not committed the offense in the first place. The second view is that conviction is obliterated but guilt remains. The third view is that neither the conviction nor guilt is obliterated. The second view, which appears to be the majority rule today, has its roots in a 1915 article by Professor Samuel Williston, "Does a Pardon Blot out Guilt?" 28 Harv. L. Rev. 647, 653, in which he wrote:

"The true line of distinction seems to be this: The pardon removes all legal punishment for the offence. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible."

This fundamental distinction has been generally adopted and followed by the courts. See, e.g., Bjerkan v. United States, 529 F.2d 125 (7th Cir. 1975); Guastello v. Department of Liquor Control, supra, and Commissioner of Metropolitan District Commission v. Director of Civil Service, supra.

pardoned crime." Commissioner of the Metropolitan District Commission, supra, at 102.

Even the Supreme Court, without overruling Ex Parte Garland and Carlisle, has made inroads into the preserves of the executive pardon power by holding that a conviction that has been pardoned may be considered at sentencing in a subsequent criminal proceeding, Carlesi v. New York, 233 U.S. 51 (1914). While Carlesi held that a state may not take cognizance of the pardoned offense in any way that would constitute "punishment," the court did not elaborate on what it meant by "punishment." Following the lead of Carlesi, though, states have held that a sentence under a second offender or habitual criminal offender statute does not constitute punishment for the previous crime. See, e.g., United States v. Salas, 387 F.2d 121 (2d Cir. 1967). Cf. 14 V.I.C. § 61(e) (Supp. 1985). In fact, it is "the minority rule in this country that a prior conviction for which a full pardon has been given may not form the basis for a conviction under [a] habitual criminal act." Murray v. State of Louisiana, 347 F.2d 825, 826 (5th Cir. 1965).[4]

The defendant, however, relies on Bjerkan v. United States, 529 F.2d 125, 127 (7th Cir. 1975), for the proposition that a pardon restores a convicted defendant's basic civil rights and does away with the "collateral consequences of his conviction." Bjerkan recognizes though, that, "[a] pardon does not 'blot out guilt' nor does it restore the offender to a state of innocence in the eyes of the law as was suggested in Ex Parte Garland." Id. at 128, n.2. Moreover, Bjerkan recognizes that an important distinction must be made and that while "the *fact of conviction* after a pardon cannot be taken into account in subsequent proceedings . . . *the fact of the commission of the crime* may be considered." Id. (emphasis added). See also Commonwealth v. Vickey, 412 N.E.2d 877 (Mass. 1980).

Applying the holding of Bjerkan, supra, it has been held that "a presidential pardon does not relieve an attorney from discipline." Grossgold v. Supreme Court of Illinois, 557 F.2d 122, 126 (7th Cir. 1977). Similarly, the present defendant's pardon did not prevent the

---

[4] As pointed out, note 1 supra, in the absence of local law to the contrary the rules of the common law as expressed in the restatements of the law and to the extent not so expressed, as generally understood and applied in the United States are the rules of decision in Virgin Islands courts. 1 V.I.C. § 4. As such, the majority rule is controlling here. Estate of Baby Foy v. Morningstar Beach Resort, Inc., Civil No. 1983-210 (D.V.I. St. Croix, May 27, 1986).

courts of New York from censuring him.[5] In addition, it has been held that "the reception of a pardon does not remove the stigma of a felony conviction" and the previous conviction constitutes a valid basis for denying petitioner a real estate license because "a pardon simply does not wipe the slate clean." Stone v. Oklahoma Real Estate Commission, 369 P.2d 642, 645–46 (Okl. 1962). It also has been held that where the pardon received by the defendant did not expressly authorize him to receive or possess firearms, his pardon did not exempt him from the operation of a federal statute forbidding a previously convicted felon from receiving or possessing firearms. United States v. Castellana, supra.[6] It is clear, therefore, that the modern cases establish a "general rule . . . that . . . a pardon does not obliterate the crime itself. The fact of conviction remains and the record of that fact may be used as evidence notwithstanding a subsequent pardon. A pardon implies. forgiveness and not forgetfulness." United States v. Maroney, 255 F. Supp. 235, 238 (W.D. Penn. 1968).

It also is essential to bear in mind that not one of the decided pardon cases involved facts similar to the case now before the court. In all of the cited pardon cases, the pardon is raised to shield a party from the introduction of evidence in connection with a subsequent offense arising out of a totally different factual situation and not to preclude a finding that the pardoned party, in fact, committed the offense for which he was pardoned. Here, the defendant, by use of the pardon power seeks to deny the commission of acts that he was found to have committed beyond a reasonable doubt. To deny the plaintiff the collateral use of a fact already proven beyond a reasonable doubt in this court's opinion, would be to turn the doctrine of collateral estoppel on its head and would defy elemental notions of fairness, judicial efficiency and common sense. Notwithstanding the sweeping language of the Governor's pardon of the defendant, in the absence of a finding of innocence, modern authorities preclude the exercise of the pardon power as attempted here. The defendant's argument that the Governor's

[5] In a February 1986 opinion, the First Judicial Department of New York stated, "We believe censure is an appropriate sanction in this case, notwithstanding the executive pardon. (Matter of Finn, 256 App. Div. 288; see Matter of , an Attorney, 86 N.Y. 563, 569)." In the Matter of Charles Stanley Waggoner 2d, 195 N.Y.L.J. 23 (Feb. 4, 1986).

[6] While this holding also involves elements of the supremacy of federal gun laws, that aspect is only of incidental importance to the crux of the holding, which is that pardons are without absolute effect.

pardon prevents any and all collateral use of the adjudicated fact of his assault on the plaintiff must, therefore, be rejected.

### III

The defendant also argues, presumably by analogy, that Federal Rule of Evidence 609(c)[7] precludes evidence of the defendant's conviction if the defendant has been pardoned based on a finding of rehabilitation. The defendant's argument is that because the Governor's pardon was based upon a finding of rehabilitation,[8] "evidence of the defendant's conviction is not admissible in this proceeding." The plaintiff, however, contends that Rule 609 applies, as its language provides, only to those situations where evidence of the defendant's conviction is sought to be introduced for the purpose of impeachment. The plaintiff is correct.

 First, the relief sought by the plaintiff does not bring Rule 609 into play. Rule 609 only is applicable if the defendant were to take the stand and the plaintiff desired to impeach him, i.e., to attack his credibility. As a general rule, when a person has been convicted of subsequent crime that was punishable by death or imprisonment in excess of one year, Rule 609(c)(1) precludes impeachment by evidence of a conviction that is the subject of a pardon based on a finding of rehabilitation. Although the court has been unable to: find any case concerning the issue, the Advisory Committee Notes and the legislative history provide no basis for concluding that the drafters of the rule ever intended it to apply in cases such as this one. To the contrary, all available cases construing 609(c)(1) suggest that it was intended to apply only in cases that are unrelated to the conviction for which a person has been pardoned. See, e.g., United States v. Pagan, 721 F.2d 24 (2d

---

[7] Rule 609, entitled, "Impeachment by Evidence of Conviction of Crime" provides in pertinent part that:

a) General Rule. For the purpose of attacking the credibility of a witness . . .
. . .
c) Effect of Pardon . . . Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

[8] The Governor's pardon provides, in pertinent part, "Upon due investigation it has been established that since [the time of the defendant's conviction] Charles S. Waggoner has been a law-abiding citizen and is fully rehabilitated."

102

Cir. 1983), and United States v. Wiggins, 566 F.2d 944 (5th Cir. 1978).

The entire thrust of Rule 609 is to reach an accommodation between two competing principles of criminal law—safeguarding the innocent and punishing the guilty. J. Weinstein & M. Berger, Weinstein's Evidence § 609[01] at 609-46 (1982). The rule strikes a balance between those two concepts when the conviction is sought to be used in a subsequent and different criminal prosecution or in a civil case totally unrelated to the criminal conviction. When an accused is on trial for a criminal charge that is totally unrelated to the previous conviction, the balancing approach of the rule is set in motion. In this case, only if the pardon was based on a finding of innocence, as provided for by Rule 609(c)(2), would the rule arguably be applicable. Where, as here, there is no question of the defendant's guilt or innocence with respect to the criminal charge at issue, where the issue is not one of impeachment, and where the conviction is not being utilized in a totally unrelated case, reliance on Rule 609(c)(1) simply is misplaced.

## IV

The defendant also argues that by the terms of the pardon the Governor expunged the conviction from the records of this court, the District Court of the Virgin Islands and the Department of Public Safety. Even assuming arguendo that the power to pardon granted by Section 11 of the Revised Organic Act granted the governor the authority to issue such a directive, expungement of the conviction would obliterate only the *fact of conviction* and not the *fact of guilt*. See, e.g. United States v. Maroney, 255 F. Supp. 235 (W.D. Penn. 1968), and Guastello v. Department of Liquor Control, 536 S.W.2d 21 (Mo. 1976).

More importantly, there appears to be no basis in the law to support the exercise by Governor Luis of "expungement" of records in this court, let alone the District Court. First, no case can be found interpreting the Presidential pardon power or the pardon power of state executives that in any way supports a finding that the Governor has such authority. The fact that the defendant received a gubernatorial pardon does not, in and of itself, allow him to obtain expungement of his criminal records beyond what is authorized either by statute or case law. State v. Bachman, 675 S.W.2d 41 (Mo. App. 1984).

103

> The pardon gives new effect to the criminal conviction of a defendant, but a pardon does not grant authority to close or expunge criminal records . . .
>
> . . .
>
> As noted, the pardon does not, in and of itself, authorize or permit closure. The pardon does not, in and of itself, initiate inherent powers of our courts to grant unlimited relief.

Id. at 52–53. See also Commonwealth v. Homison, 385 A.2d 443 (Pa. Super. 1978), and Cohen v. Barger, 11 Pa. Comwlth. 617, 314 A.2d 353 (1974). (Where there is no proof or allegation that the pardon was granted because of innocence, the defendant is not entitled to expunction of his criminal record.)

Finally, absent specific statutory authority, the exercise by the Governor of such power would appear to encroach upon the separation of powers doctrine. Expungement of criminal records generally has been a power vested solely in the judiciary. Some courts have found that power to be conferred, but only where it has been granted by statute. See e.g., Mulkey v. Purdy, 234 So. 2d 108 (Fla. 1970), and State v. Chambers, 533 F.2d 876 (Utah 1975). Other courts, though, have held that the judiciary has the inherent power in certain circumstances to expunge criminal records. See e.g., United States v. McLeod, 385 F.2d 734 (5th Cir. 1967). See generally Annot. Expunction of Adult Criminal Records, 11 A.L.R. 4th 956 (1982).

█ In the Virgin Islands, the power to expunge has been specifically granted to the judiciary in juvenile cases, 5 V.I.C. § 2531 (1985 Supp.). The courts of the Virgin Islands also have been granted a similar power, the authority to grant probation without conviction. 5 V.I.C. § 3711(c) (1985 Supp.) and 19 V.I.C. § 607(b) (1976).[9] Nowhere, however, do the statutes of the Virgin Islands either grant or imply that the Governor has a similar power.

---

[9] This court does not decide here under what circumstances or whether, in the absence of a specific statute, this court has the inherent authority to grant expungement of this defendant's criminal record. Cf. Christopher Constable v. Juan Luis, Civil No. 849-1984 (Terr. Ct., Div. St. Croix, Jan. 8, 1985); Paulette Hodge v. Juan Luis, Civil No. 772-1984 (Terr. Ct. Div. St. Croix, Nov. 28, 1984); Government of the Virgin Islands v. Daniel McCarthy, 18 V.I. 245 (Terr. Ct. 1982); Government of the Virgin Islands ex rel. L. D. S., 17 V.I. 265 (Terr. Ct. 1981).

■ In conclusion, the court is unpersuaded that the defendant's pardon bars consideration of the defendant's conviction in determining the plaintiff's motion for partial summary judgment as to the limited issue of whether he assaulted the plaintiff on November 23, 1981. Accordingly, there being no genuine issue as to any material facts, the plaintiff's motion for partial summary judgment will be granted, and the defendant will be collaterally estopped from relitigating the fact of his November 23, 1981, assault on the plaintiff.

## ORDER

The court having issued its Memorandum Opinion this date, it is

ORDERED that the plaintiff's motion for partial summary judgment is GRANTED and the defendant is collaterally estopped and barred from relitigating his assault on the plaintiff, and it is further

ORDERED that defendant's motion in limine is denied.