MICHAEL DeLUCA vs. CHIEF OF POLICE OF NEWTON.

Middlesex. March 4, 1993. - May 5, 1993.

Present: LIACOS, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*Firearms. License. Pardon. Police*, Records. *Criminal Records. Statute*, Retroactive application.

Police reports concerning a killing that resulted in a conviction of manslaughter were not records required to have been sealed pursuant to G. L. c. 127, § 152, as amended by St. 1983, c. 120, where the person convicted received a pardon for that offense before the amendment's effective date. [158-159]

A chief of police was entitled to consider the acts underlying pardoned offenses in determining whether an applicant is "a suitable person" to receive a license to carry firearms pursuant to G. L. c. 140, § 131. [159-160]

CIVIL ACTION commenced in the Newton Division of the District Court Department on July 1, 1988.

On appeal to the Superior Court Department a motion for summary judgment was heard by *James F. McHugh*, J., and the case was reported by him to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Richard G. Chmielinski*, Asssistant City Solicitor, for the defendant.

*Karen L. MacNutt* for the plaintiff.

*M. Yvonne Gonzalez*, Special Assistant Attorney General, for Massachusetts Advisory Board of Pardons, amicus curiae, submitted a brief.

O'CONNOR, J. In Massachusetts, a person may not legally carry a firearm without first obtaining a license to do so or a firearm identification card. G. L. c. 269, § 10 (1990 ed.). In 1988, the plaintiff applied to the defendant, the chief of po-

lice of Newton, for such a license pursuant to G. L. c. 140, § 131 (1990 ed.). Section 131 provides in material part that, after investigation, a chief of police of a city or town in which the applicant resides or has a place of business "may, except for . . . a person who has been convicted of a felony . . . issue . . . a license to carry firearms . . . if it appears that the applicant is a suitable person to be so licensed . . . . Any person denied a license . . . may . . . file a petition to obtain judicial review in the district court having jurisdiction in the city or town wherein the applicant filed for said license; and a justice of said court, after having heard all of the facts, may direct that a license be issued the applicant, if he finds that there was no reasonable ground for refusing such license and that the applicant was not prohibited by law from holding the same."

The defendant denied the plaintiff's license application. The plaintiff obtained judicial review in the Newton Division of the District Court Department, but he failed to obtain an order directing the issuance of a license. The plaintiff appealed to the Superior Court pursuant to G. L. c. 231, § 97 (1990 ed.). The defendant moved for summary judgment and a Superior Court judge denied the motion. The defendant then requested that the judge report the matter to the Appeals Court, and the judge, concluding that his "denial of the motion for summary judgment so affect[ed] the merits of the case, and the public interest, that [the matter] ought to be decided now," granted the request. The judge reported the following question: "On the record then before it, did the trial court properly deny defendant's motion for summary judgment?" We transferred the case to this court on our own initiative. The plaintiff has raised no question before us with respect to the propriety of the report. We now reverse the order denying the defendant's motion for summary judgment and we remand for the entry of judgment for the defendant.

The judge in the Superior Court, who denied the defendant's motion for summary judgment, filed a detailed memorandum in support of his ruling. In that memorandum he recited the following facts, which appear to be undisputed. "On

May 18, 1988, plaintiff submitted an application to carry firearms to the defendant. After receiving the application, the defendant, through his designee, Captain John Solemme, conducted a routine investigation into plaintiff's suitability for a firearms license. Captain Solemme reviewed, among other things, Waltham Police Department reports which revealed that plaintiff, while employed as a special police officer by the Waltham Housing Authority, shot and killed a 19 year old boy after he, the boy and some of the boy's relatives became involved in an altercation while the plaintiff was attempting to tow a car. The plaintiff was later convicted of manslaughter for that killing and sentenced to ten years in state prison. In 1983, plaintiff received a pardon for that offense as well as for others of less serious proportions.

"After reviewing the results of Captain Solemme's investigation, defendant concluded that [the plaintiff] was not a suitable person to carry a firearm and notified him of his decision in a letter which stated, in pertinent part, as follows:

'My determination of your unsuitability to carry a firearm is based upon your conduct in several past incidents. An investigation, one that is routinely conducted on all firearms license applicants, revealed your significant involvement in violent and improper activities in the past. One of these incidents involved a shooting that subsequently led to a death, and another involved your impersonation of a police officer. Since the occurrence of these incidents, you have received a full and complete pardon by the Governor. This pardon had the effect of erasing the direct legal consequences of any past convictions. It is important for you to realize that my denial of your application is not based upon your convictions of these various offenses. While you are legally eligible to apply to obtain a license, I feel that the circumstances surrounding your past conduct make you unsuitable to carry a firearm.

'. . . The serious nature of your conduct during the events underlying your pardoned convictions indicate[s] a lack of suitability on your part. In my opinion, your participation in these past incidents reflects your possession of behavioral qualities that are not appropriate in a firearms license holder.' "

The pardon to which the judge referred in his memorandum was granted on April 6, 1983. Four months later, St. 1983, c. 120, amending G. L. c. 127, § 152, became effective. It stated in relevant part that "[u]pon approval of a petition for pardon, the governor shall direct all proper officers to seal all records relating to the offense for which the person received the pardon. Such sealed records shall not disqualify a person in any . . . application for employment or other benefit . . . including . . . licenses . . . nor shall such sealed record be admissible in evidence or used in any way in any court proceeding or hearing before any board, commission or other agency . . . ."

It is clear that records required to have been sealed pursuant to G. L. c. 127, § 152, could not lawfully have been used by the defendant as part of his investigation of the plaintiff. The critical question, however, is whether the Waltham police department reports reviewed by the defendant or his designee, and relied on by him at least in part in denying the license, were required to have been sealed. If the reports were required to have been sealed, the defendant's motion for summary judgment was properly denied. If the reports were not required to have been sealed, the defendant's conclusion that the plaintiff was unsuitable to be licensed to carry a firearm, based on the reports and unmet by any contradictory evidence, entitles the defendant to summary judgment in his favor. See *Chief of Police of Shelburne* v. *Moyer*, 16 Mass. App. Ct. 543, 546 (1983) ("To warrant a finding that a chief of police had no reasonable ground for refusing to issue a license it must be shown that the refusal was arbitrary, capricious, or an abuse of discretion"). We hold that the reports were not required to have been sealed.

"Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Mirageas* v. *Massachusetts Bay Transp. Auth.*, 391 Mass. 815, 819 (1984), quoting *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973). "We have previously noted that statutes must be interpreted as enacted and statutory omissions cannot be supplied by the court." *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 839-840 (1984). Furthermore, "[u]nless the legislative intent is unequivocally clear to the contrary, a statute operates prospectively, not retroactively." *Sentry Fed. Sav. Bank* v. *Co-operative Cent. Bank*, 406 Mass. 412, 414 (1990). The statute states that the Governor shall direct that a person's records be sealed, "[u]pon approval of a petition for pardon." The plain meaning of the statute is that, after the effective date of the statute, whenever a petition for pardon is approved, the Governor shall at that time direct that records pertaining to the pardoned offenses be sealed. The statute does not state that the Governor shall, on the effective date of the act, direct the proper officers to seal all records pertaining to previously-pardoned offenses and we shall not add that provision to the statute. Therefore, the sealing statute, c. 127, § 152, does not provide for the sealing of the records, including police reports, pertaining to the offenses for which the plaintiff was pardoned.

Although the plaintiff's criminal records are not sealed (or required to be sealed) under the sealing statute, the pardon granted the plaintiff does affect the uses to which those records may be put. In *Commissioner of the Metro. Dist. Comm'n* v. *Director of Civil Serv.*, 348 Mass. 184 (1964), we adopted the following interpretation of pardons by Professor Williston: "The pardon removes all legal punishment for the offence. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the

crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible." *Id.* at 194, quoting Williston, Does a Pardon Blot out Guilt, 28 Harv. L. Rev. 647, 653 (1915). The chief of police, therefore, was entitled to consider the acts underlying the plaintiff's pardoned offenses in determining whether he is "a suitable person" to receive a license to carry firearms. See G. L. 140, § 131.

The order denying the defendant's motion for summary judgment is reversed. The case is remanded to the Superior Court for the entry of judgment for the defendant.

*So ordered.*