PAUL GIRAGOSIAN *VS.* CHIEF OF POLICE OF ARLINGTON.

No. 09-P-75.

Middlesex. October 2, 2009. - November 16, 2010.

Present: BERRY, GRAINGER, & WOLOHOJIAN, JJ.

*Firearms. License. Practice, Civil,* Action in nature of certiorari, Counterclaim and cross-claim, Judicial review of license to carry firearms.

In the circumstances of a civil action in the nature of certiorari, brought in Superior Court by a plaintiff seeking review of a decision of a District Court judge affirming the revocation of his firearms licenses by the defendant town chief of police, the judge erred in granting summary judgment in favor of the defendant on the ground that the plaintiff had not asserted his challenges to the revocation of his licenses as compulsory counterclaims in an earlier case brought in Superior Court by the town, where the plaintiff was clearly seeking appellate review of the District Court judge's affirmance of the revocation of his licenses, rather than asserting a claim; therefore, his grievance could not properly have been brought as a counterclaim, whether compulsory or permissive [258-260]; further, this court declined to consider the revocation of the plaintiff's licenses under G. L. c. 140, § 22, to sell firearms and to gunsmith, where those revocations were not appealable to the District Court in the first instance [260].

CIVIL ACTION commenced in the Superior Court Department on July 6, 2007.

The case was heard by *Christine M. McEvoy*, J., on a motion for summary judgment.

*Dean Carnahan* for the plaintiff.

*Juliana deHaan Rice*, Town Counsel (*Edward M. Marlenga* with her) for the defendants.

WOLOHOJIAN, J. The plaintiff appeals from the entry of summary judgment in favor of the defendant. The plaintiff's complaint, which asserted an action in the nature of certiorari, was dismissed on the ground that the claims should have been brought instead as counterclaims in a separate action. Because we conclude that the underlying certiorari action was by its

nature an appellate proceeding, rather than a claim amenable to assertion via counterclaim, we reverse.

1. *Background.* Giragosian owned and operated a gun shop in Arlington (town) for thirty years. On March 16, 2007, the town's chief of police, after a hearing, issued an order forfeiting Giragosian's five firearms licenses. (The reasons for the chief's order can be found in the margin.[1]) The five licenses Giragosian held were (1) a license to sell firearms under G. L. c. 140, § 122; (2) a license to sell ammunition under G. L. c. 140, § 122B; (3) a license to be in business as a gunsmith under G. L. c. 140, § 122; (4) a class A license to carry firearms under G. L. c. 140, § 131; and (5) a license to possess a machine gun under G. L. c. 140, § 131.[2]

The revocation of a license under any of these sections may be appealed. However, the timing and mechanism of appeal are not the same for each statute.

General Laws c. 140, § 122B, which governs Giragosian's license to sell ammunition, provides that a license revocation is to be appealed within thirty days by filing a petition in the District Court.[3]

General Laws c. 140, § 131, which governs Giragosian's

---

[1]In December, 2002, Giragosian left an unlicensed customer unsupervised in the store's training area, in violation of G. L. c. 140, § 130. In Giragosian's absence, the customer killed himself. His license temporarily suspended, Giragosian applied for restoration but did not supply truthful answers on the application. He also failed to complete the required safety course prior to reinstatement of his licenses. Giragosian failed to maintain records of all firearm transactions as required by G. L. c. 140, § 123. Giragosian failed, in violation of G. L. c. 140, § 123, to report the theft of firearms from his store in September, 2005. Police across the State have recovered these guns from crime scenes. In January, 2007, another customer took his own life in the store, using one of Giragosian's guns. After this second suicide, the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) inspected and discovered that Giragosian, among other violations, manufactured firearms without a manufacturer's license and failed, in violation of Federal law, to report to the Federal Bureau of Investigation handgun sales to selected individuals.

[2]With respect to the licenses issued pursuant to G. L. c. 140, § 122, the chief was empowered to forfeit or suspend such licenses by G. L. c. 140, § 125. See Randall & Franklin, Municipal Law and Practice § 16.10, at 33 (5th ed. 2006). Sections 122B and 131 contain within themselves provisions enabling the revocation of licenses within their scope. G. L. c. 140, §§ 122B & 131.

[3]"Any person refused a license under this section or once issued a license

license to carry firearms and license to possess a machine gun, provides a ninety-day period in which to appeal to the District Court.[4]

General Laws c. 140, § 122, governing Giragosian's licenses to sell firearms and to operate as a gunsmith, does not itself provide any mechanism for appeal from the revocation or suspension of a license. However, a person who is "refused" a license under this section may within ten days thereafter apply for such a license to the colonel of the State police. G. L. c. 140, § 122.[5]

Because it will aid in understanding the discussion that follows, we pause here to set out the provisions of G. L. c. 249, § 4, which governs actions in the nature of certiorari:

> "A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court or, if the matter involves any right, title or interest in land, or arises under or involves the subdivision by-laws or regulations, in the land court or, if the matter involves fence viewers, in the district court. Such action shall be commenced within sixty days next after the proceeding complained of."

G. L. c. 249, § 4, as amended through St. 2006, c. 366.

under this section has had said license suspended or revoked may obtain judicial review of such refusal, suspension or revocation by filing within thirty days of such refusal, suspension or revocation a petition for review thereof in the district court having jurisdiction in the city or town in which the applicant filed for such license." G. L. c. 140, § 122B, as amended by St. 1969, c. 799, § 2.

[4] "Any applicant or holder aggrieved by a denial, revocation or suspension of a license, unless a hearing has previously been held pursuant to chapter 209A, may, within either 90 days after receiving notice of such denial, revocation or suspension or within 90 days after the expiration of the time limit during which the licensing authority is required to respond to the applicant, file a petition to obtain judicial review in the district court having jurisdiction in the city or town wherein the applicant filed for, or was issued, such license." G. L. c. 140, § 131(f), as amended by St. 1998, c. 180, § 41.

[5] "Any person refused a license under this section may within ten days thereafter apply to the colonel of [S]tate police for such license, who may direct that said licensing authorities grant said license, if, after a hearing, he is satisfied there were no reasonable grounds for the refusal to grant such license and that the applicant was not barred by provisions of law from holding such a license. . . ."

As noted above, the town's police chief revoked Giragosian's licenses on March 16, 2007. Giragosian sought judicial review by filing a complaint in the District Court on April 17, 2007. As best we can determine from the limited record before us,[6] Giragosian did not appeal the revocation of his licenses under G. L. c. 140, § 122 (license to sell firearms and to practice gunsmithing).[7] Because Giragosian did not invoke G. L. c. 140, § 122, in his complaint, the District Court judge concluded that those license revocations were not before him. The judge held that the remaining three license revocations (i.e., sale of ammunition, class A license to carry, and machine gun possession) had been properly appealed to him and, after hearing, concluded that the police chief had acted reasonably in revoking them. A memorandum of decision dated June 1, 2007, and an amended memorandum dated June 7, 2007, are contained in the record; both reflect the same reasoning and outcome.[8]

On May 17, 2007, the town filed a complaint in Superior Court seeking an injunction requiring Giragosian to surrender all firearms and ammunition. This suit was necessitated by the fact that Giragosian had refused to surrender these items despite the revocation of his licenses two months earlier. Giragosian

[6]Giragosian did not supply a copy of his District Court complaint, nor did he provide any other information to show that those license revocations were encompassed within his appeal to the District Court. The District Court judge found (and we accept) that Giragosian did not mention section 122 in his complaint.

[7]Nor could Giragosian have done so. Section 122 sets out only an appeal mechanism for refusals to issue licenses, and says nothing about revocations or suspensions. General Laws c. 140, § 125, which enables the suspension and forfeiture of § 122 licenses, also contains no mechanism by which such decisions are to be appealed. By contrast, sections 122B and 131 both explicitly provide that license denials, suspensions, and revocations can be appealed. Compare G. L. c. 140, § 122, with G. L. c. 140, §§ 122B & 131. Although the reason for this difference is not readily apparent, we apply the plain language of the statute where, as here, it would not lead to an "absurd result, or one contrary to the Legislature's manifest intention." *White* v. *Boston*, 428 Mass. 250, 253 (1998). In the absence of an appeal mechanism in § 122B, Giragosian was required to seek review by timely filing a complaint in the nature of certiorari with either the Superior Court or the Supreme Judicial Court. G. L. c. 249, § 4. This he did not do.

[8]The District Court docket has not been supplied, and we do not know when either decision was entered on the docket. In the absence of this information, the chief has not satisfied his burden to demonstrate that the action is untimely.

answered the complaint on June 6, 2007. The requested injunction issued on June 13, 2007.

On July 5, 2007, Giragosian filed a motion for leave to amend his answer to assert a counterclaim appealing the revocation of the G. L. c. 140, § 122, licenses (sale of firearms and gunsmithing). That motion was denied on the ground that Giragosian had failed first to timely appeal to the colonel of the State police.[9]

On July 7, 2007, Giragosian filed a certiorari complaint in the Superior Court, naming the police chief as the defendant, seeking review of the District Court decision that had affirmed the revocation of his G. L. c. 140, §§ 122B & 131 licenses.[10] G. L. c. 249, § 4. His complaint alleged various irregularities in the District Court proceeding, including a lack of impartiality on the part of the District Court judge and that judge's improper consideration of information extrinsic to the proceedings. On December 27, 2007, the chief filed a motion for summary judgment on the ground that Giragosian's claims should have instead been brought as counterclaims in the other Superior Court action in which the town sought an injunction. The Superior Court judge agreed with the chief, concluding that the matter should have been brought as a compulsory counterclaim in the Superior Court injunction action and, as a result, dismissed the certiorari complaint. This is the order that is on appeal here.

2. *Discussion.* Giragosian argues that the judge erred when she ruled that Giragosian could not seek review of the District Court judge's decision by way of his certiorari complaint, but rather was required to assert them as compulsory counterclaims in the town's injunction action. We begin our analysis by examining the nature of the two procedural avenues.

Counterclaims can be either compulsory, Mass.R.Civ.P. 13(a), as amended, 423 Mass. 1405 (1996), or permissive, Mass.R. Civ.P. 13(b), 365 Mass. 758 (1974). A compulsory counterclaim

---

[9]No ruling in the town's injunction action is on appeal here.

[10]Review of a District Court judgment concerning firearm licensing is appealable via G. L. c. 249, § 4. See *DeLuca* v. *Chief of Police of Newton*, 415 Mass. 155, 156 (1993) (appeal via G. L. c. 231, § 97); *Godfrey* v. *Chief of Police of Wellesley*, 35 Mass. App. Ct. 42 (1993) (review under G. L. c. 249, § 4 required).

is "any claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing party,[11] if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Mass.R. Civ.P. 13(a). A permissive counterclaim, on the other hand, is "any claim against an opposing party," Mass.R.Civ.P. 13(b). Whether compulsory or permissive, only a "claim" can be asserted as a counterclaim. A claim is

> "1. The aggregate of operative facts giving rise to a right enforceable by the court . . . . 2. The assertion of an existing right; any right to payment or to an equitable remedy even if contingent or provisional . . . . 3. A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for."

Black's Law Dictionary 281-282 (9th ed. 2009).

We are presented here with a review of a prior adjudication, not a "claim." The police chief has pointed us to no authority, nor have we found any, requiring a party to pursue an appeal by way of a compulsory counterclaim.

An action in the nature of certiorari is an action to "correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal." G. L. c. 249, § 4, as amended by St. 1986, c. 95. Such an action in the nature of certiorari may result in "judgment quashing or affirming such proceedings or

---

[11]It is clearly established that "a party need not assert a counterclaim that has not matured 'at the time of serving his pleading.' . . . A counterclaim acquired by defendant after he has answered will not be considered compulsory, *even if it arises out of the same transaction as does plaintiff's claim." Boston & Me. Corp.* v. *United Transp. Union,* 110 F.R.D. 322, 327-328 (D. Mass. 1986), quoting from 6 Wright & Miller, Federal Practice and Procedure § 1411, at 55 (1971) (emphasis in original). Giragosian filed his answer in the injunction suit on June 6, 2007. The District Court decision was dated June 1, 2007, and the amended decision was dated June 7, 2007. Giragosian argues that his claim did not mature until the amended decision and, hence, he could not have pursued his appeal as a counterclaim. Given our disposition on other grounds, we need not reach this argument. Moreover, even were we required to reach the issue, we would be hampered by Giragosian's failure, see note 8, *supra,* to provide any information about when either decision was entered on the docket or when judgment entered.

such other judgment as justice may require." *Ibid.* The scope of review is limited to "errors of law apparent on the record." *Durbin* v. *Selectmen of Kingston,* 62 Mass. App. Ct. 1, 4 (2004). In short, an action in the nature of certiorari is a form of appellate review; in other words, "[a] proceeding undertaken to have a decision reconsidered by a higher authority; esp[ecially], the submission of a lower court's or agency's decision to a higher court for review and possible reversal . . . ." Black's Law Dictionary 112 (9th ed. 2009).

In this case, Giragosian filed his certiorari complaint seeking review of the District Court's affirmance of the revocation of his licenses. He specifically prayed that the Superior Court "reverse the decision of the Cambridge District Court, [and] order Defendant Ryan to restore all of Giragosian's licenses." Giragosian was clearly seeking appellate review, rather than asserting a claim. As such, his grievance could not properly have been brought as a counterclaim, whether compulsory or permissive. The Superior Court judge, therefore, erred in granting summary judgment in favor of the chief.

Although the summary judgment order must be vacated and the matter remanded for further proceedings, only three of the licenses will be at issue on remand: the license to sell ammunition under G. L. c. 140, § 122B; the class A license to carry firearms under G. L. c. 140, § 131; and the license to possess a machine gun under G. L. c. 140, § 131. The revocations of those three were properly appealed to the District Court, and in turn were the subject of Giragosian's timely certiorari complaint. The § 122 licenses (sale of firearms and gunsmithing) were not appealable to the District Court, both because § 122 does not provide for the appeal of license revocations to that court, G. L. c. 140, § 122, and because the District Court does not have jurisdiction over a certiorari action unless it involves fence viewers. G. L. c. 249, § 4. Thus, although Giragosian asks that we review the revocation of all five licenses, only the §§ 122B and 131 licenses are properly before us, just as they were the only ones properly before the Superior Court in the certiorari action. Further proceedings in the Superior Court on remand will be limited to the §§ 122B and 131 licenses.

For the reasons set out above, the order allowing summary

judgment is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*