RAY, J.
Eric Allen Kauk appeals from a final order of the Department of Financial Services denying his application for a license as a “resident life including variable annuity and health insurance” agent and permanently barring his licensure as an insurance agent in Florida. Mr. Kauk raises three issues, one of which has merit. He argues, and we agree, that the Department erred by imposing a per se bar to his licensure due to his convictions for manufacturing and passing counterfeit Federal Reserve notes because Mr. Kauk’s civil rights have been restored in all relevant respects. Although the Department provided an alternative analysis to justify denying the present license application, when compared with the findings the Department adopted, that analysis can only be interpreted as a misapplication of case law. Because binding precedent establishes that a per se bar cannot be constitutionally applied to Mr. Kauk, and the findings the Department adopted are inconsistent with the result it reached, we reverse and remand.
*807 I.
In 1998, when Mr. Kauk was twenty-two years old, he and a coworker printed approximately 390 counterfeit $10 bills and purchased $2,000 in money orders with the counterfeit bills. Mr. Kauk used some of the money orders to obtain $1,400 in cash and pay his state probation officer. Mr. Kauk and the coworker discussed traveling to Georgia to pass more of the counterfeit money, but the Secret Service intervened before any such plans came to fruition. Mr. Kauk admitted his role in the scheme and, in 1999, pled guilty to manufacturing and passing counterfeit Federal Reserve notes, which constitute two separate felonies under federal law.
Mr. Kauk was sentenced to eleven months’ imprisonment followed by two years’ probation and ordered to pay restitution. As of January 2003, Mr. Kauk had served his sentence, successfully completed his probation, and paid his restitution. In June 2009, Mr. Kauk applied for licen-sure as a “resident life including variable annuity and health insurance” agent. Under the law then in effect, the Department determined that Mr. Kauk would be eligible to apply again on May 11, 2012. In the meantime, in February 2010, the Governor, with the concurrence of the requisite members of the Cabinet, restored all the civil rights Mr. Kauk had lost in Florida with the exception of the right to possess or own a firearm.
On May 17, 2012, Mr. Kauk applied again for the same licensure. The Department denied this application and issued a Notice of Permanent Bar, citing the 1999 convictions as the factual basis for the denial and permanent bar. The law applicable to Mr. Kauk’s application had been amended in 2011 to permanently preclude the licensure of any applicant who commits a felony involving fraud. The Department cited this bar, found at section 626.207(3), Florida Statutes (2011), as one statutory ground for its decision. As an alternative to section 626.207(3), the Department cited section 626.207(4), Florida Statutes (2011), which provides an absolute fifteen-year disqualification period for a felony involving moral turpitude that is not covered by section 626.207(3). In addition, the Department cited section 626.611(1), (7), and (14), Florida Statutes (2011), which list as reasons to deny applications for licensure an applicant’s lack of one or more of the qualifications specified in the Insurance Code, lack of fitness or trustworthiness to engage in the business of insurance, or conviction of a felony.
Mr. Kauk sought further proceedings, admitting the historical facts surrounding his convictions but disputing the Department’s allegation that he is unfit or untrustworthy to hold a license and arguing that he is entitled to sit for the licensure examination and complete all other requirements. The parties submitted the case to a Department hearing officer on a stipulated record. The stipulated record includes a written statement by Mr. Kauk professing rehabilitation, recalling a feeling of remorse sodn after his crimes, noting his family and employment situation, and detailing his community involvement and volunteer activities.
Before the hearing officer, the Department argued, in pertinent part, that each statutory provision cited in the notice requires denial of Mr. Kauk’s application as a matter of law due to his convictions. Mr. Kauk replied that the Department had misconstrued the applicable statutes as imposing a per se bar against his licensure even though his civil rights have been restored. He explained that this construction of the statutes is prohibited under Sandlin v. Criminal Justice Standards & Training Commission, 531 So.2d 1344 (Fla.1988), and G.W. Liquors of Collier, *808 Inc. v. Department of Business Regulation, 556 So.2d 464 (Fla. 1st DCA 1990), which hold that a statute precluding licen-sure or certification for a particular occupation due to the conviction of a crime may not be interpreted as imposing an automatic bar against the licensure of those who have received a pardon or restoration of rights under the clemency power granted to the Governor in article IV, section 8(a) of the Florida Constitution. Mr. Kauk contended that he is entitled to apply for licensure because no per se bar applies and he is “a citizen fully rehabilitated, that conforms his behavior to societal norms, possesses good moral character, and is otherwise fit to serve as a resident life with variable annuity and health insurance agent ... in the State of Florida.”
The hearing officer agreed with Mr. Kauk and recommended approval of his application. In support of this recommendation, the hearing officer observed that Mr. Kauk has become a model citizen; is in a stable marriage and raising children; has stable, long-term employment; and contributes a substantial amount of his time to charity and community service. The hearing officer further supported his recommendation with the following finding:
The undisputed competent evidence, including the circumstances surrounding the Petitioner’s prior conviction and the undisputed evidence of his full and complete rehabilitation, show that the Petitioner currently conforms his behavior to societal norms, possesses good moral character, and is otherwise morally fit to serve as a residential life with variable annuity and health insurance agent in the State of Florida.
In its final order, the Department accepted the hearing officer’s findings, in full, while rejecting his conclusions concerning Sandlin, G.W., and the per se bar. The Department maintained that section 626.207(3) must be applied to Mr. Kauk and construed as imposing a permanent bar against his licensure. In addition, despite having accepted the hearing officer’s findings, the Department concluded that even assuming that the Department cannot impose the per se bar of section 626.207(3), the facts underlying Mr. Kauk’s convictions, when considered along with the legislative policy expressed in section 626.207(3), still require denial of his license as an exercise of the Department’s discretion. Consequently, the Department maintained the permanent bar against Mr. Kauk’s licensure.
II.
A.
Our review is governed by section 120.68(7), Florida Statutes (2012). Under this statute, we are required to remand a case to the agency for further proceedings or set aside agency action when “[t]he agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action.” § 120.68(7)(d). The Department’s first error in this case was its clearly erroneous interpretation of section 626.207(3) as requiring denial of Mr. Kauk’s application and imposition of a permanent bar as a matter of law.
Section 626.207(3) provides that “[a]n applicant who commits a felony of the first degree; a capital felony; a felony involving money laundering, fraud, or embezzlement; or a felony directly related to the financial services business is permanently barred from applying for a license under this part.” Similarly, the statute at issue in Sandlin barred from certification as a law enforcement officer any person who had been convicted of any felony or a misdemeanor involving perjury or a false *809 statement. 531 So.2d at 1344. The Sandlin court refused to construe this statute as imposing a per se bar against certification of a pardoned felon, reasoning that such a construction would render the statute an unconstitutional infringement on the executive’s clemency power by diminishing the effect of a pardon. Id. at 1346-47. The court held that, because the Legislature is presumed to have intended a constitutional result when drafting any statute, the statute could not be read as imposing an absolute bar against certification of a pardoned felon. Id. at 1346-47.
The Department argues at length that the Sandlin construction does not apply to this case because Mr. Kauk has not been pardoned, but has merely had his civil rights restored. Although there may be wisdom in the distinction between one who has been pardoned and one who has had his civil rights restored (hereinafter “restored felon”), we are not at liberty to embrace such a distinction. In G.W., this Court extended Sandlin to require construction of a similar statute as not imposing a per se licensure bar against a restored felon, regardless of the lack of a full pardon. 556 So.2d at 465. Both this Court and the Department are required to follow the precedent established by Sandlin and G.W. and, therefore, interpret section 626.207’s per se bar as not reaching restored felons.
We also reject the Department’s claim that section 626.207 is different from the statute at issue in Sandlin because section 626.207 imposes a per se bar only where an applicant has been convicted of a particular type of felony rather than simply any felony. Because interpreting section 626.207 as precluding the licensure of those who have been pardoned of those particular felonies still would “diminish[] the effect of’ an extension of clemency, this distinction is misguided. See Sandlin, 531 So.2d at 1346. The Legislature cannot, and under the reasoning of Sandlin presumably did not intend to, restrict the Governor’s full clemency power to offenses outside certain categories.
For the foregoing reasons, Mr. Kauk is not categorically disqualified from licen-sure as an insurance agent based solely on his felony convictions for which his civil rights have been restored. The Department, therefore, erred in imposing a permanent bar.
B.
Sandlin, of course, does not require licensure simply because a per se bar cannot be applied. The Sandlin court recognized that “[pjersons seeking to practice certain professions or employments ... can be required to demonstrate their good moral character, even though they may have been fully pardoned for previous crimes.” 531 So.2d at 1346. Reasoning that “a pardon removes punishment, but not moral guilt,” the court went on to approve a licensing agency’s consideration of the facts underlying such a person’s convictions — and reasonable reliance on those facts — in the context of a complete evaluation of the applicant’s qualifications and suitability. Id. at 1346-47 (quoting Comm’r of Metro. Dist. Comm’n v. Dir. of Civil Serv., 348 Mass. 184, 203 N.E.2d 95, 103 (1964)). The court emphasized that a licensing agency is permitted to deny a license to a pardoned felon when the “serious character of the criminal conduct underlying his conviction” justifies the decision. Id. Ultimately, the court held that a licensing agency may “take into account and rely on the facts” underlying pardoned convictions and may give weight to the general policy expressed in a statute precluding licensure due to criminal convictions. See id.
*810 In rejecting the hearing officer’s recommendation, the Department relied on these two considerations. However, when understood in the context of the findings the Department adopted and the statutory grounds the Department cited, these considerations do not explain the denial of Mr. Kauk’s application for licensure. The grounds upon which the Department relied all hinged on Mr. Kauk’s commission of the 1999 crimes and, perhaps, general notions of moral fitness and trustworthiness to engage in the business of insurance. The hearing officer addressed each ground by finding that Mr. Kauk is a completely rehabilitated model citizen with good character, whose civil rights have been restored in all relevant respects and who is “otherwise morally fit” to hold the license he seeks, and the Department adopted these findings.* It is contradictory for the Department to adopt these findings and then conclude that the facts of his crimes and the policy underlying the statutory bar ipso facto render him unfit for a license. If Mr. Kauk is fully rehabilitated as to the crimes at issue, then the facts of those crimes are insignificant in an assessment of his current fitness to hold a license. Likewise, Mr. Kauk’s complete rehabilitation renders the prophylactic purpose of the statute inapplicable to him. Thus, the juxtaposition of the Department’s findings with the denial of Mr. Kauk’s application reveals that the Department misreads Sandlin.
Sandlin does not allow the denial of a license to a restored felon due to prior convictions when the licensing agency has made findings of complete rehabilitation and fitness to hold a license. If Sandlin could be applied in this way, its holding would be hollow. Because the Department accepted the hearing officer’s findings, and the only grounds upon which the denial was predicated were the crimes as to which Mr. Kauk has been rehabilitated and general notions of moral fitness and trustworthiness, a proper application of Sandlin precludes denial of Mr. Kauk’s license at this juncture. Consequently, we reverse the denial and remand for entry of an order consistent with this opinion.
REVERSED and REMANDED.
BENTON and PADOVANO, JJ., concur.

 The determination of moral fitness to hold a license is typically an issue of fact subject to ordinary methods of proof. Albert v. Fla. Dep't of Law Enforcement, Criminal Justice Standards & Training Comm'n, 573 So.2d 187, 188 (Fla. 3d DCA 1991); see also Yeoman v. Constr. Ind. Licensing Bd., 919 So.2d 542, 544 (Fla. 1st DCA 2005); Palamara v. State, Dep’t of Bus. & Prof'l Reg., 855 So.2d 706, 708 (Fla. 4th DCA 2003).